***NOT FOR PUBLICATION*** 

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
X. CHARLES LI,                        :
                                      :
        Plaintiff,                    :    Civ. Action No.: 11-3589 (FLW)
                                      :
v.                                    :    OPINION
                                      :
RENEWABLE ENERGY SOLUTIONS, INC.,     :
et al.,                               :
                                      :
        Defendant.                    :
_____:

**WOLFSON, United States District Judge:**

X. Charles Li ("Plaintiff") filed this action on June 22, 2011, claiming that his former employer, Renewable Energy Solutions, Inc. ("Renewable"), and Zoltan Kiss ("Kiss"), the principal of Renewable Energy Solutions (collectively "Defendants") owe him unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.. Defendants move to dismiss the claim for a lack of subject matter jurisdiction, arguing that Plaintiff is not an "employee" under the FLSA. Plaintiff counters with a cross-motion for partial summary judgment on that same issue. For the reasons set forth below, both Defendants' motion to dismiss and Plaintiff's cross-motion for partial summary judgment are denied.

**I.    BACKGROUND**

Beginning in August 1, 2005, Plaintiff, a research scientist with a Ph.D. in material engineering, worked as Renewable's Director of Research and Development until October 2009, when he resigned from that position. Compl., ¶ 4; Li Cert., at ¶¶ 1-2. It is undisputed that

1

Plaintiff was an employee at the beginning of the relationship. At issue is whether Plaintiff remained an employee through the end of his relationship with Renewable, or whether he became an independent contractor in 2007. My ruling on Defendants' motion to dismiss and Plaintiff's cross-motion for partial summary judgment turns on this threshold question.

### A.      Facts

Plaintiff served as Renewal's Director of Research and Development for materials and devices. Li Cert., ¶ 2. According to Plaintiff's certification, his primary duties included setting up research and development facilities, performing research and related engineering duties in the areas of "inorganic photovoltaics, hydrogen storage in carbon nanotubes and other nanomaterials, and the photoluminescence of inorganic and organic materials," as well as other duties Renewal deemed of importance, from time to time. Id. at ¶ 3. Plaintiff reported to Defendant Kiss, Renewal's former CEO. According to Kiss, Plaintiff's role at the beginning of his employment was to develop products to be marketed by Renewal. Kiss Supp. Cert., ¶ 3

Renewable initially paid Plaintiff as an employee, utilizing W-2 tax forms for withholding purposes. Id. at ¶ 4. As such, Plaintiff had his taxes withheld from his paycheck by Renewable. Id. at 4. In 2007, Renewable's accountant, Mr. Blaise Mazzoni ("Mazzoni"), had a discussion with Plaintiff concerning the form of his compensation. Id. Mazzoni suggested that Plaintiff could be paid on a "1099 basis," which would cause Renewable to stop withholding Plaintiff's taxes. Id. Mazzoni compared this type of payment to being a "consultant." Id., See also Kiss Supp. Cert., at ¶ 6 ("Plaintiff chose to accept the status of an *independent consultant* when the change from an employee to a consultant was first suggested to him.") (emphasis added). Plaintiff agreed to the change. Li Cert., at ¶ 4.

2

After the switch, Plaintiff continued to receive the same gross salary.  Id.  Additionally, Plaintiff continued to receive medical and dental benefits through Renewable's health plans. Id. However, Plaintiff was responsible for his own worker's compensation insurance and self-employment taxes as an independent consultant.  Kiss Supp. Cert., at ¶ 5.

The change in payment was never discussed between Plaintiff and Kiss.  Id. Furthermore, Plaintiff never discussed any changes in his working conditions or responsibilities with either Mazzoni or Kiss.  Li Cert., at ¶ 4.  According to Plaintiff, he continued to work on the premises, submit bi-weekly time sheets and report to Kiss as needed.  Id., at ¶ 5.  While Kiss alleges that Plaintiff was free to come and go as he pleased, Plaintiff continued to work the same forty hour workweek.  Id., see also Kiss Supp. Cert. at ¶ 5.

Defendants claim that Plaintiff began performing more discrete services after the change, including applying for grants.  Id., at ¶ 3-4.  Furthermore, Defendants asserts that, after the change in payment, Plaintiff was given specific tasks to perform, but was not supervised in completing those tasks. Kiss Supp. Cert. at ¶ 2.  However, Plaintiff claims that his duties did not change after he became a consultant.  Li Cert., ¶ 5.  Instead, according to his certification, Plaintiff continued to report directly to Kiss on a weekly or as-needed basis, and was directed and supervised by Kiss.  Id.  Furthermore, Plaintiff claims that his work as a research and development manager "was an integral part of the business," which was directly related to the development of the products the company wanted to sell.  Id. at ¶ 8.

Plaintiff never invested in the company. Li Cert., at ¶ 7.  Nor was he offered opportunities to earn bonuses or stock options.  Id.  Finally, according to Plaintiff, the work that he performed required no special skills, other than his engineering degree.  Id.

**B.**     **Procedural History**

3

On June 22, 2011, Plaintiff filed in this Court his complaint for unpaid wages under the FLSA and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.2 and 4.7, along with a breach of contract claim under New Jersey law. As his basis for this Court's jurisdiction, the complaint asserts that there is federal diversity jurisdiction under 28 U.S.C. § 1331 as well as subject matter jurisdiction under the FLSA, 29 U.S.C. § 216. In lieu of an answer to the complaint, Defendants filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter and diversity jurisdiction.[1] As noted, Defendants' central subject matter jurisdiction argument is that Plaintiff is not an "employee" as that term is defined by the FLSA. Following Defendants' filing, Plaintiff filed his cross-motion for partial summary judgment on the employee question. The Court now rules upon both motions.

## II.   STANDARDS OF REVIEW

### A.   12(b)(1) Standard

A party may move for dismissal pursuant to Rule 12(b)(1) based on lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.

---

[1]   Defendant argues that there is no diversity jurisdiction under 28 U.S.C. § 1331 because the amount in controversy is under the diversity statute's jurisdictional requisite of $75,000. The complaint asserts that Defendant owes Plaintiff $27,884.22 in wages. In addition to these compensatory damages, Plaintiff further seeks reasonable attorney's fees, costs, and expenses. Where federal jurisdiction is rooted in subject matter jurisdiction under the FLSA, rather than diversity, that the amount in controversy may not amount to $75,000 does not deprive the court of jurisdiction. Kozlowski v. City of Dunkirk, 319 F.Supp.2d 342, 344 (W.D.N.Y. 2004) (citing Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 694 (2003)). Because I ultimately conclude that the Court has subject matter jurisdiction over Plaintiff's FLSA claim, I need not rule on Defendant's diversity challenge which, in any event, was not properly briefed.

1991)).  No presumption of truthfulness is accorded to the plaintiff's allegations.  U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 509 (3d Cir. 2007).

When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction.  If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff."  Id.  "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings."  Id.  Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated.  Symczyk, 656 F.3d at 191 n.4  (citing Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites."  U.S. ex rel. Atkinson, 473 F.3d at 514.  Here, Defendants make a factual challenge to jurisdiction, arguing that there is no federal question jurisdiction under the FLSA because Plaintiff is not an employee under that Act.

Plaintiff argues that Defendants' motion should be construed as a motion for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) rather than a 12(b)(1) motion for lack of subject matter jurisdiction.  So construing Defendants' motion, Plaintiff further argues, the Court should convert the motion into one for summary judgment and consider evidence outside of the pleadings.  In support of his argument, Plaintiff cites Oestman v. National Farmers Union Ins. Co., 958 F.2d 303 (10th Cir. 1992), an out-of-district case in which the Tenth Circuit affirmed a lower court's grant of summary judgment to a defendant-employer based on the plaintiff's failure to demonstrate that he was an employee under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").  Perhaps Plaintiff found

5

this case relevant because, in that case, the court notes similarities between the ADEA and FLSA. Whatever similarities there are between the two statutes, I do not find Oestman persuasive here on the question of which federal rule of civil procedure should govern Defendants' motion. Oestman contains no discussion about which procedural framework should apply when ruling on employee status under a given statute; it merely notes that the lower court in that case had granted summary judgment. 958 F.2d at 303.

I am guided, instead, by the Third Circuit's ruling in CNA v. United States, 535 F.3d 132 (3d Cir. 2008). In that case, the Third Circuit addressed the jurisdiction/merits dichotomy that arises when an employee acts within the scope of his employment for purposes of determining whether federal courts have jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. The Circuit explained the import of choosing the proper procedural framework in that case:

> Whether a Government employee was acting within the scope of his employment plausibly could be addressed as one of jurisdiction or one of the merits of a claim. That choice corresponds to whether Rule 12(b)(1) or, on the other hand, Rule 12(b)(6) or Rule 56 provided the proper procedure. A great deal turns on this question because Rule 12(b)(6) or Rule 56 would provide more procedural safeguards to the plaintiff Subrogees than does Rule 12(b)(1). For example, a district court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true.

Id. at 140.

The Circuit went on to hold that "treating the scope-of-employment issue as jurisdictional in the FTCA context is the better course . . . because the FTCA defines federal courts' jurisdiction to hear cases seeking damages from the Government …." Id. In this connection, the Circuit found it important that the FTCA's scope-of-employment requirement appears in the

same subsection as Congress's grant of jurisdiction to the courts. Id. at 142. This suggested to the CNA court that that the scope-of-employment requirement "represents a limitation on Congress's . . . and thus a limitation on federal courts' jurisdiction." Id. The Circuit reasoned, "whe[n] a statute contains within itself the bounds of its jurisdiction" it is most likely that Congress intended to "tether[ ] jurisdiction to meeting that subsection's requirements." Id. at 143.

Similarly, here, the FLSA defines the federal courts' jurisdiction to hear FLSA cases by expressly limiting that jurisdiction to claims against "employer[s]" whose "employees" have not been properly paid in accordance with the statute. 29 U.S.C. 216(b). Section 216(b) provides, in pertinent part,

> Any employer who violates the provisions of . . . this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

Id. preempted on other grounds by Alden v. Maine, 527 U.S. 706 (1999).

Courts have consistently interpreted section 216(b) as a jurisdictional provision. See Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 791 (2003) ("The FLSA provides that an action 'may be maintained . . . in any Federal or State court of competent jurisdiction …."); Friedrich v. U.S. Computer Svcs., 974 F.2d 409, 410 n. 1 (3d Cir. 1992) ("Subject matter jurisdiction . . . exists under section 16(b) of the FLSA …."). And, like the scope-of-employment requirement in the FTCA, language in the precise provision that grants courts jurisdiction over FLSA claims expressly limits those authorized to bring such claims to

employees. Compare Animal Science Products, Inc. v. China Minmetals Corp., 654 F.3d 462 (3d Cir. 2011) (holding that determination of whether a defendant was involved in "import trade or import commerce" under the Foreign Trade Antitrust Improvements Act ("FTAIA") was not a jurisdictional limitation, but went only to the merits, because "[t]he FTAIA neither speaks in jurisdictional terms nor refers in any way to the jurisdiction of the district courts."). Accordingly, I conclude that employee status under the FLSA is a jurisdictional question and that the proper procedural method for adjudicating a dismissal motion challenging the plaintiff's status is through Rule 12(b)(1).[2]

Having decided to proceed under Rule 12(b)(1), I am "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." CNA, 535 F.3d at 145 (citing Atkinson, 473 F.3d at 514). In choosing to apply Rule 12(b)(1), I am mindful of the Circuit's admonition not to rule on the merits of Plaintiff's case under this procedural vehicle in light of the fewer procedural protections accorded the plaintiff under the 12(b)(1) standard. See CNA, 535 F.3d at 144-45 ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.").

### B. Summary Judgment Standard

---

[2] My ruling is consistent with the bright line rule adopted by the Supreme Court in Arbaugh v. Y & H Corp., 546 U.S. 500, 510, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." Animal Science, 654 F.3d at 468 (quoting Arbaugh, 546 U.S. at 515-16).

Summary judgment is appropriate when the movant demonstrates that there is no "genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). A material fact is "[a] fact[ ] that might affect the outcome of the suit under the governing law." Haybarger v. Lawrence County Adult Probation and Parole, --- F.3d ----, 2012 WL 265996, *3 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In order for an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. (quoting Anderson, 477 U.S. at 248–49).

## III. DISCUSSION

The FLSA generally defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1) (1988). Employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d). "The statutory definitions regarding employment status are necessarily broad to effectuate the remedial purposes of the Act." Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991) (see also United States v. Rosenwasser, 323 U.S. 360, 363 (1945)). In fact, "Congress and the courts have both recognized that, of all the acts of social legislation, the Fair Labor Standards Act has the broadest definition of 'employee.'" Donovan v. Dial America Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985) (quoting 81 Cong. Rec. 7657 (remarks of Senator Hugo L. Black)); see also Equal Employment Opportunity Commission v. Zippo Manufacturing Co., 713 F.2d 32, 37 (3d Cir. 1983)).

"There is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA." Martin, 949 F.2d at 1292. Over the years, several different types of tests have been used by the courts in answering this question. To see this,

compare the totality-of-the-circumstances test applied in Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947) ("[T]he determination of the relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity.") with the five-factor test utilized by the Tenth Circuit in Wheeler v. Hurdman, 825 F.2d 257 (10th Cir. 1987), and the six-factor test adopted by the Ninth circuit in Real v. Driscoll Straberry Associates, 603 F.2d 748, 754 (9th Cir. 1979).

However styled, and regardless of the number of factors considered, the touchstone of these tests is whether the employee-employer relationship exists as a matter of "economic reality." Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 (1961); see Godoy v. Restaurant Opportunity Center of New York, Inc., 615 F. Supp. 2d 186 (S.D.N.Y. 2009). This inquiry centers on whether the putative employee is economically dependent upon the putative employer. Godoy, 615 F.Supp.2d at 193. The Supreme Court has found it necessary to focus on the "economic realities of the relationship" in light of the expansive definitions of employee and employer under the FLSA. Martin, 949 F.2d at 1293.

Consistent with the Supreme Court's directive, the Third Circuit has instructed lower courts to consider the "circumstances of the whole activity" in assessing whether a putative employee falls within the bounds of the Act. Id. In this connection, the Third Circuit has adopted a six-factor test to aid courts in determining employee status under the FLSA. The factors of the test are:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of

10

> permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

Id. (quoting Donovan v. Dial America Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985)). Application of these factors here counsels a finding that Plaintiff was an employee for FLSA-jurisdictional purposes.

With these principles in mind, I turn to the parties' motions.

### A.  Defendants' Motion to Dismiss

As noted, in connection with Defendants' Rule 12(b)(1) motion, I am "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." CNA, 535 F.3d at 145 (citing Atkinson, 473 F.3d at 514). Where there is a disputed issue of fact relevant to the six-factor test adopted by the Third Circuit in Martin, I will resolve that factual dispute. My ruling, in this regard, is only for the purposes of determining the Court's subject matter jurisdiction and is not on the merits.

#### 1.  Control

I begin with the first factor—the degree of the alleged employer's right to control the manner in which the work is to be performed. Facts relevant to this inquiry are "the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." Bamgbose v. Delta-T Group, Inc., 684 F.Supp.2d 660, 669 (E.D.Pa. 2010) (citing Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675-76 (1st Cir. 1998). See also Donovan, 757 F.2d at 1383 (analyzing to what degree putative employees were supervised and subject to hiring and firing) (citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 32-33 (3d Cir. 1985)). This factor may weigh against finding employee

status when the putative employer exercises only minimal control over the putative employee. See Donovan, 757 F.2d at 1383.

Defendant Kiss, the former CEO of Renewable, asserts in his initial certification that Plaintiff "was given specific tasks to perform and set his own hours once his employment status was changed [in 2007] to consultant." Kiss Cert., ¶ 4. Plaintiff disputes Kiss' characterization of their work relationship, asserting in his certification submitted along with his opposition that, "[a]s a result of the 2007 change . . ., there was no change in any of my work responsibilities and duties, hours and time of work, or any working conditions." Id. at ¶5. More to the point, he states,

> [c]ontrary to the assertion of Zoltan Kiss, I was not free to schedule my own hours. I continued to report to Zoltan Kiss weekly or more frequently or sometimes less frequently as needed. I did no independent work but continued to work on those projects and tasks as determined by Zoltan Kiss. At all times my work was directed by and supervised by Dr. Kiss to whom I reported.

Id. In reply, Kiss states by way of a supplemental certification that Plaintiff "operated on his own, without being directed how or in what manner to complete tasks." Kiss Supp. Cert., ¶ 2.

At this juncture, I credit Plaintiff's version of events because of the specificity of his certification as compared with the generalized, broad-brush nature of the Kiss averments. For one, Plaintiff's description of the work environment is more detailed than Kiss' generic description. Moreover, I find it telling that, when faced with Plaintiff's specific allegations regarding his work situation submitted in opposition, Kiss provides no further detail in his supplemental certification about whether he decided the scope of Plaintiff's projects or tasks, or how frequently he reviewed Plaintiff's work. For this reason, I conclude that Renewable, through its former CEO Kiss, retained the right to control the manner in which Plaintiff

performed his work. That being the case, I conclude for purposes of this motion that this factor weighs in favor of a finding that Plaintiff was an employee.

### 2. Opportunity for Profit or Loss

This factor centers on whether the plaintiff had meaningful opportunities for profit or any significant risk of financial loss, depending upon his managerial skill. Martin, 949 F.2d at 1294. By way of example, this factor may be present for a worker whose earnings are tied to his performance. See id. Another example is when the putative employee makes a capital investment that may be lost if the business does not succeed. See Donovan v. Sureway Cleaners, 656 F.2d 1368, 1372 (9th Cir. 1981) cited with approval in Donovan, 757 F.2d at 1382. Here, Plaintiff generally avers that he received a bi-weekly salary of a set amount, which suggests that there were no meaningful opportunities for profit or any significant risk of financial loss depending upon the use of his managerial skill. Nor is there is any evidence that Plaintiff made a capital investment in Renewal. He further states in his certification that he was never offered stock in Renewal. Li Cert., ¶ 6. Defendants do not dispute any of these facts. Accordingly, this factor weighs in favor of a finding that Plaintiff was an employee.

### 3. Investment in Equipment and Employment of Workers

Similarly, Plaintiff asserts, and Defendants do not dispute, that Plaintiff did not make any type of investment either in equipment or support staff. Li Cert., ¶ 7. As such, this third prong of the test also points to Plaintiff being Renewable's employee.

### 4. Special Skill

The fourth factor asks whether the service rendered by the alleged employee requires a special skill. Unskilled workers are more likely to be deemed employees because "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee

status." Martin, 949 F.2d at 1295 (quoting Usery v. Pilgrim Equip. Co., Inc., 527 F.2d 1308, 1313 (5th Cir. 1976)). That said, all skilled workers are not independent contractors. In ascertaining worker status, courts should consider whether, "in the larger picture, [workers] have the skills necessary to locate and manage discrete work projects characteristic of independent contractors, or whether the skills are of the task-specific, specialized kind that form a piece of a larger enterprise, suggesting employee status." See LeMaster v. Alternative Healthcare Solutions, Inc., 726 F.Supp.2d 854, 861 (M.D.Tenn. 2010) (quoting Wilson v. Guardian Angel Nursing, Inc., No. 3:07-0069, 2008 WL 2944661, * 13 (M.D.Tenn. 2008)).

Here, Plaintiff avers that he served as Director of Research and Development for materials and devices. Li Cert., ¶ 2. According to his certification, his duties throughout his tenure at Renewal included setting up research and development facilities, performing research and related engineering duties in the areas of "inorganic photovoltaics, hydrogen storage in carbon nanotubes and other nanomaterials, and the photoluminescence of inorganic and organic materials," as well as other duties Renewal deemed of importance, from time to time. Id. at ¶ 3. Finally, Plaintiff asserts, Kiss directed him to perform additional duties such as managing intellectual property issues and patent filings, and interacting with Renewal's customers. Id.

Kiss avers that, at the beginning of Plaintiff's work relationship with the company, Plaintiff developed products to be marketed by Renewal. Kiss Supp. Cert., ¶ 3. Once he became a consultant in 2007, however, Renewal encouraged Plaintiff to pursue research and development projects consistent with his expertise as an organic chemist. Id. at ¶ 2. According to Kiss, Plaintiff prepared grant applications that were not central to Renewal's business. Id. at ¶ 4.

Based on both Plaintiff's and Kiss' certifications, it is clear that Plaintiff utilized his special expertise as an organic chemist in his work at Renewal. His work in the area of inorganic photovoltaics is one example. However, the inquiry is not simply whether Plaintiff utilized specialized knowledge in his work. If his tasks were not discrete work projects, but formed a specific part of larger work at Renewal, this factor may still favor a finding that he is an employee. Weighing both parties' account of Plaintiff's work (which, in my view, are not necessarily inconsistent with each other), I find that this factor presents a close call. Plaintiff's description suggests that he merely provided specialized skills on larger Renewal projects while Kiss' description of Plaintiff's post-2007 work suggests that he was beginning to take on more discrete projects related to Plaintiff's organic chemistry specialty. On balance, however, I find that this factor weighs in favor of employee status because the bulk of Plaintiff's work was on larger Renewal business and the organic chemistry-focused research and development projects, as well as the attendant grant applications, were completed at Renewal's direction—not Plaintiff's. See Kiss Supp. Cert., ¶ 2 (stating that Renewal urged Plaintiff to pursue organic chemistry research and development projects).

### 5. Permanence of the Working Relationship

The fifth factor examines the permanency of the relationship. Based on both Plaintiff's and Kiss' certifications, it is clear that Plaintiff was not hired for a specific period, or to complete one specific task. Instead, based on both Plaintiff's and Kiss' accounts, Plaintiff's four-year employment relationship with Renewal more closely resembled that of a normal at-will employee. As such, the fifth factor points towards finding an employee-employer relationship. Accord LeMaster, 726 F.Supp.2d at 861 (holding that plaintiff-licensed professional nurse

15

demonstrated permanence factor where facts showed that she worked for defendants at least six months).

### 6. Integral Economic Relationship

Finally, the sixth and final factor asks whether the services rendered by the Plaintiff were an integral part of Renewable's business. As my discussion of the special skills factor reveals, the parties offer competing averments on this point. Defendant claims that Plaintiff's job duties changed, with a later focus on grant-writing, which Defendant claims was not an integral part of the business. However, Plaintiff avers that the majority of his time was still spent researching scientific matters that were essential to the products Renewal sold.

As noted in my special skills factor analysis, I conclude for the purpose of the instant motion that Plaintiff spent the majority of his time working on Renewal's larger research and development projects. Kiss' certification suggests that Plaintiff began transitioning towards more organic-chemistry focused projects and grant writing, but that averment does not preclude a finding that Plaintiff's work was integral to Renewal's business. That said, the record does not contain substantial evidence relating to the nature of Renewal's business. Therefore, while the limited evidence presented supports a finding of employee status, I do not accord much weight to this factor. LeMaster, 726 F.Supp.2d at 863.

Overall, the six-factor test suggests that Plaintiff is an employee, however, I must still examine the total economic realities of the relationship before making my final determination. Here, too, the economic realities point to an employee-employer relationship. It is undisputed that Plaintiff's sole source of income was Renewable. Plaintiff had no other jobs, but instead relied entirely on Renewable for his income and livelihood. The overarching question of the economic realities test is whether Plainitff was, "as a matter of economic reality, dependant on

the business [he] served, or conversely, whether [he was] in business for [himself]," Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 305 (4th Cir. 2006), and there is no indication that he was in business for himself.  Plaintiff treated the job like a normal employment: he worked regular hours and reported to his supervisor.  Moreover, he continued to receive medical and dental benefits through Renewable's health plans during his entire tenure with the company.

That Plaintiff was paid on a 1099 basis is the only fact that mimics independent contractor status, but non-withholding of taxes alone will not undermine employee status, Ansoumana v. Gristede's Operating Corp., 255 F.Supp.2d 184, 190 (S.D.N.Y. 2003) (concluding that workers were employees under the FLSA and state wage law even though they had received 1099 forms to report their earnings while working for the defendant)[3].  More to the point, the Third Circuit has made clear that courts must focus on the totality of the circumstances in assessing the work relationship.  Martin, 949 F.2d at 1293 ("[N]either the presence nor the absence of any particular factor is dispositive ….").  Considering all the facts presented, I conclude that Plaintiff was, for the purposes of finding jurisdiction under the FLSA, an employee

---

[3]     Otherwise, an employer could manipulate the FLSA law by making that one change.  As the Ansoumana Court explains:

> An employer's characterization of an employee is not controlling, however, for otherwise there could be no enforcement of any minimum wage or overtime law. There would be nothing to prevent old-fashioned labor contractors from rounding up workers willing to sell their labor cheaply, and assigning them to perform outsourced work, without complying with minimum wage requirements. Thus, not the characterization of a hiring hall, but the test of "economic reality," governs how a relationship of employment is to be characterized in relation to the FLSA.

Id. at 190 (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).

of Renewable at all relevant times. Therefore, Defendant's motion to dismiss for lack of jurisdiction is denied.

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion for partial summary judgment is denied at this juncture. Just as with Defendants' motion to dismiss, the Court must apply the six-factor employee status test to determine whether Plaintiff is an employee under the FLSA. The only difference, for this motion, is that the Court's determination would be on the merits and not jurisdictional in nature.

As I explained in connection with my analysis of the control factor in Defendants' motion to dismiss, the parties dispute the degree of control that Renewal and Kiss exercised over Plaintiff's work. For this same reason, and viewing the evidence in the light most favorable to Defendants as the nonmoving party, I conclude that there exists a genuine issue of material fact as to this element of the six-factor putative employee test. Accord Rong Chen v. Century Buffet and Restaurant, No. NO. CIV.A. 09-1687, 2012 WL 113539 (D.N.J. Jan. 12, 2012) (denying summary judgment where there existed a genuine issue of material fact as to the amount of control exercised over putative employee); cf. id. at *3 ("Because of the fact-intensive nature of the inquiry, an employer determination can rarely be made on summary judgment.") In addition, as noted in my analysis of the integral economic relationship factor, there is little record evidence on the nature of Renewal's business. It is Plaintiff's burden to demonstrate that summary judgment is appropriate, and the aforesaid paucity of evidence further counsels against a finding of summary judgment at this early stage in the litigation.

### IV. CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff's motion for partial summary judgment is denied without prejudice.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson, U.S.D.J.

Dated: February 21, 2012